ANDREW BLANCHARD, JR. *vs.* CHARLES ELLIS & another.

Where one, who has made a deed with full covenants of warranty, purchases a paramount title after eviction of his grantee, such title does not enure to the grantee by way of estoppel, without his consent, so as to defeat his right to maintain an action on the covenant against incumbrances, and recover the consideration money paid by him, and interest.

ACTION OF CONTRACT on the covenant against incumbrances, contained in a deed from the defendants to the plaintiff, dated the 9th of November 1838, purporting to be made in consideration of the sum of $5,520, and to convey " one undivided quarter part of the east half of township numbered three in the eighth range of townships in the county of Penobscot and State of Maine," with the usual covenants of warranty. The declaration set forth the execution and delivery of the deed; and then alleged that, at the date of the execution thereof, the land therein described was not free from incumbrances, but was under an attachment, made on the 18th of February 1836, in an action brought by Wiggins Hill against James T. Hobart, then owner of the premises, and from whom the defendants derived their title; that in said action Hill, on the 6th of November 1838, recovered judgment for the sum of $52,755.39; and on said judgment execution issued, and was duly levied upon said land

on the 25th of December 1838; and seizin and possession of said land was delivered to Hill, the judgment creditor, and received by him. Writ dated October 18th 1851.

At the trial before *Bigelow,* J. there was evidence tending to prove the facts stated in the declaration, and also the following facts : The amount of the execution was much greater than the value of the land levied upon, which was the whole of the east half of the township, of which the land conveyed to the plaintiff constituted an undivided quarter part; and by virtue of the levy the title to the east half of said township became absolutely vested in Hill in one year from the date of the levy; and he continued in possession of the land levied upon until the 4th of December 1848, when he made a deed to the defendants of the portion included in their deed to the plaintiff, expressed to be in consideration of $1,100, and with the usual covenants of warranty. In February 1841, the defendants gave notice to the plaintiff of this failure of title, and offered to transfer to him certain stock by way of indemnity for his loss. During the time that Hill remained in possession of said half township, he received the sum of four hundred dollars net for stumpage. The plaintiff offered no evidence, beyond what has already been stated, to show that the premises were more or less valuable than at the date of the deed from the defendants to him ; or that any thing had been realized or received therefrom, except said stumpage.

The case was taken from the jury by consent of parties, and reserved for the consideration of the full court, with the agreement that if the court should be of opinion, upon the foregoing facts, that the plaintiff was entitled to recover nominal damages only, judgment should be rendered in his favor for one dollar; to which should be added the sum of one hundred dollars, if the court should be of opinion that the plaintiff was entitled to any part of the stumpage received by Hill; and that if the court should be of opinion that the plaintiff was entitled to recover any other or further damages, the case should be sent to a jury for trial and for the assessment of such damages, on principles to be determined by the court.

Blanchard *v.* Ellis & another.

*W. H. L. Smith*, for the plaintiff.

*C. M. Ellis*, for the defendants. The plaintiff is entitled to recover but one hundred dollars, if any thing more than nomina. damages. The deed from the defendants to the plaintiff being a deed of warranty, the deed from Hill to the defendants enured to the plaintiff, and gave him a good title by estoppel, and the the plaintiff could not elect not to receive it. *Baxter* v. *Bradbury*, 20 Maine, 260. *Cornell* v. *Jackson*, 3 Cush. 511. *Pike* v. *Galvin*, 29 Maine, 183. *Crocker* v. *Pierce*, 31 Maine, 177. Co. Lit. 365. 4 Cruise Dig. Tit. 32, *c.* 20, § 64. *Somes* v. *Skinner*, 3 Pick. 52. *White* v. *Patten*, 24 Pick. 324. The interest, when it accrues, feeds the estoppel. *Doe* v. *Oliver*, 2 Smith's Lead. Cas. 417, 5 Man. & Ryl. 202, and 10 B. & C. 181. *Maynard* v. *Maynard*, 10 Mass. 456, and *Harrison* v. *Phillips Academy*, 12 Mass. 461, cited by the plaintiff, are only to the point that a deed is not originally valid without delivery and acceptance. But here the plaintiff had accepted a deed from the defendants with covenants of warranty, and thereby "not only assented to, but secured and made available to himself, all the legal consequences resulting from that covenant." 20 Maine, 263. The case of *Tucker* v. *Clarke*, 2 Sandf. Ch. 96, cited by the plaintiff, only shows that a grantor, who has broken his covenant, cannot invoke the aid of a court of equity, to compel his grantee to accept a deed of the land.

The plaintiff, then, having the title to the land made good to him by the defendants at their cost, can recover only nominal damages, or the one hundred dollars for stumpage. *Baxter* v. *Bradbury*, 20 Maine, 264. The qualification in that case, "if he has not been disturbed in his possession," refers to an actual, and not to a technical disturbance, for that there was in that case. "If, by any means, the party is restored to his land, it will reduce the damages *pro tanto;*" *Cornell* v. *Jackson*, 3 Cush. 511; that is to say, he shall have his land, and nothing more, except intermediate damages. See also *Wheeler* v. *Sohier*, 3 Cush. 219; *Garfield* v. *Williams*, 2 Verm. 329; *M' Carty* v. *Leggett*, 3 Hill, 134; *Herrick* v. *Moore*, 19 Maine, 313; *Gibbs* v. *Jemison*, 12 Alab. 820; *Singleton* v. *Allen*, 2 Strob. Eq. 166; *Clark* v. *Parr*, 14 Ohio, 118;

17 *

Sedgw. on Damages, (2d ed.) 180–184; *Spring* v. *Chase*, 22 Maine, 505; *Whiting* v. *Dewey*, 15 Pick. 428; Rawle on Covenants, (1st ed.) 30 ; Sugd. Vend. (7th Amer. ed.) 764, *note*. In this action, there is no fixed, inflexible rule of damages; the inquiry is, whether the defendants' covenant is made good substantially. The actions on the personal covenants are substituted for the ancient voucher and warranty, in which lands were recovered. The most just rule is to restore the same land; and the plaintiff, recovering the land, and any intermediate damage, is made whole. And this conforms to the analogous rules in other actions; in trover, the restoration of the goods goes in mitigation of damages.

The defendants might have been compelled in equity to make the plaintiff's title to the land good. Sugd. Vend. (7th Amer. ed.) 766. If the plaintiff should recover in this case, he might still bring his writ of entry in the courts of Maine, and recover the land too; for the defendants would be estopped by their deed to deny his title.

THOMAS, J. It is not doubted, that the facts of this case establish a breach of the defendants' covenant; but the question at issue between the parties is as to the measure of damages.

The defendants say, that a deed of the premises having been made to them by Hill, on the 4th of December 1848, the title so conveyed to them enured, by way of estoppel, to the plaintiff, and is now in him, and that the only damages he can recover are nominal, or his quarter of the stumpage of the entire tract; such stumpage constituting the only rents and profits of the estate during the eviction of the plaintiff, or the difference, if any, between the value of the land at the time of the conveyance by the defendants to the plaintiff, and its value at the time of the conveyance by Hill to the defendants.

The general doctrine, on which the defendants rely, is quite familiar; that if A., having no title, make a deed of land to B., with full covenants of warranty, and A. subsequently acquire a title by descent or purchase, he is estopped by his covenants, as against his grantee, to deny that he had a good title at the time of his grant, and such new title is said to enure to his grantee.

Strictly speaking, there would seem to be no transmutation of estate when the new title comes to the grantor. Nor is there any force in the original deed to convey a title not then existing in the grantor; for nothing can pass but his then existing title. But the grantor and those claiming under him are estopped to deny the validity of the title, which he has solemnly asserted, and to set up a title against it. The law presumes that he has spoken and acted according to the truth of the case, and will not permit him or those claiming under him to deny it. " The reasons," says Mr. Butler, in a note to Co. Lit. 352 *a*, " why estoppels are allowed, seem to be these: No man ought to allege any thing but the truth for his defence, and what he has alleged once is to be presumed true, and therefore he ought not to contradict it; for, as it is said in the 4 Inst. 272, *allegans contraria non est audiendus*." It might be curious to trace the progress of this doctrine of estoppel, as applicable to the covenant of warranty, from the simple rebutter of Lord Coke, (Co. Lit. 265 *a*,) which should bar a future right, to avoid a circuity of action, to its present condition, in which there is claimed for it the full force of a feoffment, or fine or common recovery at the common law; that is, having the function of actually devesting the feoffor or conusor of any estate which he might thereafter acquire. But waiving, because not necessary to our purpose, the discussion of the origin and extent of the doctrine of estoppel, it will be sufficient to say that we do not feel called upon to extend its application; especially when such extension would tend to defeat the principle on which the doctrine of estoppel rests, which is the prevention of wrong and injustice.

Supposing it to be well settled that, if a new title come to the grantor before the eviction of his grantee, it would enure to the grantee, and not deciding, because the case does not require it, whether the grantee, even after eviction, might elect to take such new title, and the grantor be estopped to deny it; we place the decision of this case on this precise ground, that where a deed of land has been made with covenants of warranty, and the grantee has been wholly evicted from the premises by a title paramount, the grantor cannot, after such entire eviction

of the grantee, purchase the title paramount, and compel the grantee to take the same against his will, either in satisfaction of the covenant against incumbrances, or in mitigation of damages for the breach of it.

We do not seek a better illustration of the soundness of this principle than is furnished by the facts of this case. The land, for which the consideration stated in the deed was $5,520, was under attachment in a suit in which judgment had been recovered for more than fifty thousand dollars; the entire tract, of which one quarter had been conveyed to the plaintiff, was afterwards levied upon, seizin given to the creditor, and the plaintiff wholly evicted. He had no estate or interest left. The covenant against incumbrances being personal, and not running with the land, he had nothing which could pass by deed. He could not redeem his undivided quarter, without a redemption of the entire estate. He could not, for a period of ten years, enter upon the land, without committing a trespass. The defendants admit the existence of the title paramount, and the eviction of the plaintiff; but contend, after the eviction has continued ten years, that they, as grantors, may avail themselves of this rule of estoppel, to force the grantee to take the estate, however changed the situation of his own affairs, or the condition of the land. So that the equitable rule of estoppel, which forbids the grantor to deny that he had the estate which he had assumed to grant, and the truth of his own covenant — a rule established for the protection of the grantee, and to be applied only to effect justice and prevent wrong — is converted into a right of election in the grantor, upon a breach of his covenant, to pay back the consideration money, or by indirection to reconvey the estate. We say an election by the grantor; for it is clear that the grantee cannot compel the grantor to buy in the paramount title, but must rely solely upon his covenants. It is equally clear that, if the estate, during the eviction, should greatly increase in value, the grantor would not be likely to purchase such paramount title, but would submit to an action on his covenants. So that, under any rule of damages suggested, the plaintiff would lose many of the advantages result-

ing from the ownership of land, including the increase of value by the application of his own labor or capital, or its rise in the market. There is neither mutuality or equity in such a rule.

And we are satisfied, upon examination of the authorities, that no case will be found which carries the doctrine of estoppel to the length claimed by the defendants, which in fact estops the grantee, and leaves a right of election in the grantor. The case of *Baxter* v. *Bradbury*, 20 Maine, 260, has been strongly pressed upon us as a decision of the very question at issue. If this were so, the question having reference to the title to land in that state, the decision, on that ground, as well from our respect for that court, would be entitled to the highest consideration, if indeed it were not conclusive. But, though there are *dicta* in that case, which state the doctrine very broadly, the case itself differs materially from the one at bar. That was an action for a breach of the covenant of seizin in a deed of warranty, with a mortgage back of the premises, of the same date, to the grantor. The ground, taken by the counsel of the defendant, and upon which the court seem to have proceeded in their judgment, was, that there never had been any interruption of the possession of the plaintiff. In seeking to deduce from that case a rule for our guidance, this circumstance must be deemed most material ; as, for a breach of this covenant against incumbrances, nominal damages only could be recovered, unless the plaintiff had been evicted by title paramount, or had actually discharged the in-cumbrance.

The court, in the case of *Baxter* v. *Bradbury*, refer to a statement of the result of the authorities by the late Chief Justice Parker in the case of *Somes* v. *Skinner*, 3 Pick. 52. An examination of the whole opinion in that case would lead us to infer that this statement was not made without some misgiving and distrust. The precise question now under consideration was not before the court, and what in that part of the case was decided was, that where a title has enured by estoppel, it will avail the grantee, not only against the grantor and his heirs, but strangers, who usurp possession without right; and under the facts of the case, and in the view in which it was applied, there is no occasion to reconsider the rule there stated.

The case of *Cornell* v. *Jackson*, 3 Cush. 506, was an action upon the covenant of seizin.   An action had before been brought upon the covenant of warranty, in which there was a judgment for the defendant.   9 Met. 150.   The defendant had conveyed land to the plaintiff, bounded on land of Tuckerman; a conventional line had been fixed by parol agreement between the defendant and Tuckerman; and they had occupied according to that conventional line; but the court, in the action on the covenant of warranty, held that the true line, and not the conventional line, was the boundary referred to in the defendant's deed An action was then brought on the covenant of seizin; and the possession of land by Tuckerman, between the true line and the conventional line, being under a claim of title, was held to be a breach of the covenant of seizin.   In the assessment of damages, it appeared that a portion of the land had been recovered by the defendant of the heirs of Tuckerman; and the report of the assessor submitted the question, whether the value of the land so recovered should be included in his assessment.   The court said: " If, by any means, the party is restored to his land before the assessment of damages, though it cannot purge the breach of covenant, it will reduce the damages *pro tanto.*"   In that case the title was in the grantor at the time of the deed, and he might have made a valid conveyance but for the disseizin; and what the court decided was, that if he subsequently regained the seizin, and the land was restored to the grantee, it would proportionally reduce his damages.

Upon examination of the authorities, we think no decision will be found to be in conflict with the point now decided, or which leads to the result claimed by the defence.   There are *dicta* which, taken out from their connection with the facts, in relation to which they are made, and by which their soundness must always be tested, might tend to a different conclusion; but no precedent has so extended the doctrine of estoppel, and we do not feel willing to make one.

The question of course arises, how will the defendants, the grantors, be protected?   Will they not be still estopped to deny the title of the plaintiff, if he should bring his writ of entry for

the land? The answer is, that the judgment in this suit will be a perfect bar to the plaintiff and those claiming under him. *Porter* v. *Hill,* 9 Mass. 34.

With regard to the rule of damages, there can be so serious controversy, if the plaintiff has gained no title by estoppel; the plaintiff will be entitled to the consideration money and interest. The consideration expressed in the deed is *prima facie* the true one, but liable to be controverted by evidence.

The case must be sent to a jury to ascertain the damages under this rule.